

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-12-00557-CR

Lorenzo Leroy **THOMPSON**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 290th Judicial District Court, Bexar County, Texas
Trial Court No. 2010CR5922
Honorable Melisa Skinner, Judge Presiding

Opinion by:    Karen Angelini, Justice

Sitting:    Karen Angelini, Justice
           Marialyn Barnard, Justice
           Rebeca C. Martinez, Justice

Delivered and Filed:  January 29, 2014

AFFIRMED AS MODIFIED

Lorenzo Thompson was charged with capital murder. At trial, the jury found that while in the course of committing or attempting to commit robbery, Thompson intentionally caused the death of Vanessa Pitts by driving and swerving his vehicle so as to cause Pitts to be thrown from the vehicle. There was testimony that Pitts was at a gasoline station, filling her car with gasoline, when Thompson stole a small purse from the front seat of her car. Pitts chased Thompson to his pickup truck and jumped on the truck's running board, pounding on the driver's window with her fists and yelling at Thompson through the window. Thompson then squealed his tires, leaving the

gas station with Pitts still hanging on to the truck. Thompson drove the pickup truck erratically and fast down the access road of the highway, swerving through lanes of traffic and causing Pitts to be thrown to the ground. Thompson never stopped and fled the scene, with Pitts still lying on the road. Pitts then died as a result of being thrown to the ground.

Thompson appeals his conviction for capital murder, arguing that (1) the evidence is insufficient to support his conviction; (2) he was entitled to jury instructions on the lesser-included offenses of manslaughter and criminally negligent homicide; (3) the trial court erred in overruling his objection to the State's closing argument in the guilt-innocent phase; and (4) the record fails to establish Thompson's ability to pay attorney's fees as required by the judgment. We overrule Thompson's first three issues. However, because attorney's fees should not be assessed against Thompson, we modify the trial court's judgment to omit any reference to attorney's fees. As modified, we affirm.

## SUFFICIENCY OF THE EVIDENCE

In his brief, Thompson argues the evidence is insufficient to support his conviction for capital murder because there was insufficient evidence to establish that (1) he intentionally caused Pitts's death; and (2) that he robbed Pitts. At oral argument, Thompson clarified that "it is undisputed there was a robbery here" and argued only that there is insufficient evidence that Thompson intentionally murdered Pitts *while in the course* of committing a robbery. According to Thompson, the evidence shows that the robbery ended at the gas station and did not continue as Thompson drove away from the gas station and onto the access road. We disagree with Thompson and hold the evidence sufficient to support his conviction.

In a federal due-process evidentiary-sufficiency review, we view all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307,

319 (1979); *Adames v. State*, 353 S.W.3d 854, 860 (Tex. Crim. App. 2011), *cert. denied*, 132 S. Ct. 1763 (2012). The court of criminal appeals has explained that this standard "recognizes the trier of fact's role as the sole judge of the weight and credibility of the evidence after drawing reasonable inferences from the evidence." *Adames*, 353 S.W.3d at 860. Therefore, on appellate review, we determine whether based on "cumulative force of all the evidence" the necessary inferences made by the trier of fact are reasonable. *Id.* We conduct this constitutional review by measuring the evidentiary sufficiency with "explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.*

Under Texas law, a person commits capital murder if he (1) commits murder and (2) intentionally commits the murder in the course of committing or attempting to commit robbery. *See* TEX. PENAL CODE ANN. § 19.03(a)(2) (West Supp. 2013).

With respect to murder, Thompson argues there was no evidence of his intent to kill Pitts. Pursuant to the Texas Penal Code, a person commits murder if he intentionally caused the death of an individual. *Id.* § 19.02(b)(1). A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result. *Id.* § 6.03(a) (West 2011). Intent is most often proven through circumstantial evidence surrounding the crime. *Dominguez v. State*, 125 S.W.3d 755, 761 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd). A jury may infer intent from any facts that tend to prove its existence, such as the acts, words, and conduct of the defendant. *Id.* As shown below, the jury could infer Thompson's intent to kill Pitts from the evidence presented of Thompson's acts, words, and conduct on the day of the incident.

With respect to robbery, at oral argument, Thompson argued the robbery was accomplished when he left the Exxon station and thus there was no evidence he murdered Pitts while in the course of committing a robbery. Pursuant to the Texas Penal Code, a person commits robbery if,

in the course of committing theft and with intent to obtain or maintain control of the property, he (1) intentionally, knowingly, or recklessly causes bodily injury to another; or (2) intentionally or knowingly threatens or places another in fear of imminent bodily injury or death. *See* TEX. PENAL CODE ANN. § 29.02(a) (West 2011). The Penal Code defines "in the course of committing theft" as "conduct that occurs in an attempt to commit, during the commission, *or in immediate flight after the attempt or commission of theft.*" *Id.* § 29.01(1) (emphasis added). As explained below, evidence at trial showed that Thompson was in immediate flight after taking Pitts's purse when he was fleeing down the access road.

Over ten witnesses testified about the events surrounding the commission of the crime. Testimony presented at trial showed that on April 12, 2010, Thompson drove a stolen black pickup truck to an Exxon station at the corner of Highway 90 and Military Drive in San Antonio, Texas. Vanessa Pitts, who was on her way to her first assignment for the Air Force in Del Rio, Texas, was pumping gas at the Exxon station. Thompson parked the black pickup truck on the other side of the gas pump from where Pitts was pumping her gas. Thompson then ran around the gas pump, stole a small purse or similar item from Pitts's car, and ran back to the black pickup truck. Pitts saw Thompson steal her purse, chased after him, and then jumped on the running board of the black pickup truck, pounding on the driver's side window with her fists and yelling at Thompson. Thompson then squealed his tires, driving away from the gas station and onto the access road. Pitts grabbed on to the partially opened window of the black pickup truck, yelling and screaming for Thompson to stop and for help.

Witnesses in cars with their windows up could hear Pitts's screaming. Guadalupe Martinez, Sr. was turning his vehicle onto the access road by the Exxon station when his son noted that a woman's purse was being stolen. According to Martinez, his son was referring to the Exxon station on his right. "As we were turning, I saw a car door — the door close, and I saw the girl running

around the truck." "And she jumps on the truck and starts yelling for him to stop." Martinez testified that although his windows were up, he could hear her screaming. "You could hear the screaming and you could see her jumping." "She grabbed on to the truck and started jumping, yelling." "And then you could hear the – you could hear when you – you know when it takes off you can hear the tires." "You could hear the tires squealing." Martinez's son also testified that even though the car windows were closed, he could hear Pitts screaming. Martinez's son testified that his dad was making a left turn by the Exxon station when he saw Thompson take Pitts's purse and then run back to his pickup truck. Pitts then ran around, jumped on the driver's side of the pickup truck, yelling, "Help, help. He stole my purse!" Martinez's son testified Pitts was screaming for help as she was hanging on to the truck. According to Martinez's son, Pitts was hanging from the driver's side door. Martinez's son explained that the window to the pickup truck was cracked and that Pitts was banging on the driver's side window. Then, Thompson left "aggressively." "Vooooom, you know." According to Martinez's son, Pitts was still hanging on to the pickup truck. Thompson then clipped another pickup truck, and Pitts was thrown to the ground. Thompson did not stop, but continued down the road. Pitts died shortly thereafter.

Elias Gilbert Campos, a tow truck driver, also testified he could hear Pitts screaming. He testified he heard yelling from a pickup truck that had "just peeled out of the Exxon gas station." Genelle McClatchy was walking on the access road when she heard "a horrific scream," like something "out of a movie." She testified the scream was from a lady hanging on to a pickup truck. According to McClatchy, the vehicle had turned out of an Exxon gas station and was coming down the access road. Herlis Hall testified he was driving on the access road when he heard an "awful," "terrible" scream. Johnny Castro, Sr. was leaving Taco Cabana, near the Exxon station, when he heard a woman yelling for someone to help her. She was on the running board of the pickup truck when the truck left the Exxon station "like pedal to the metal." The truck "was screeching and

squealing, like getting away." According to Castro, once the pickup truck left the Exxon, "it was just screaming after that." Pictures taken from the Exxon's surveillance video show the sequence of Pitts chasing Thompson around the pickup truck; Pitts standing on the running board of the pickup truck; Pitts hanging on to the driver's side window of the pickup truck; and Thompson driving off with Pitts still standing near the driver's side window. From this testimony, a jury could rationally conclude that the robbery did not stop at the Exxon station but continued down the access road as Thompson was fleeing the scene of the robbery.

A rational jury could also conclude that Thompson intended to cause Pitts's death. The evidence showed that after squealing his tires to exit the Exxon station, Thompson continued to drive at a high rate of speed down the access road, swerving between traffic. Martinez testified that the pickup truck was traveling fast, swerving left and right. "And the girl [is] hanging on, like barely holding on and she [is] swinging." According to Martinez, it appeared as though Thompson was "trying to throw her off." Martinez testified Pitts kept screaming "as the truck [is] swerving back and forth, and the girl was just going back and forth." The pickup truck then hit another pickup truck, and the screaming stopped. According to Martinez, the screaming continued from the gas station until the collision. Martinez's son testified that Thompson "was swerving and then he hit her up against the other car." Similarly, Campos testified that after the pickup truck "peeled out of the Exxon gas station," he could hear the tires "squealing" and saw the pickup truck "fishtail." "And when it fishtailed, you could see her going sideways." The pickup truck "was swerving" and eventually swerved into a Dodge pickup truck, causing the woman to fall to the ground.

McClatchy saw the pickup truck leave at "a pretty fast rate of speed" and then continue down the access road "at an excessive rate of speed." McClatchy saw the truck "swerving," "back and forth, "side to side." She saw the pickup truck "clip another truck" and then saw the woman

"flying off." Hall testified that he heard "this awful scream," looked over to his left, and saw a woman "hanging on to the cab of this pickup." Hall was traveling thirty-five miles per hour, and the truck "passed [him] going at a very high speed" and "was speeding up." "And the pickup swerved to the right and she disappeared." Castro testified that the pickup truck "peeled out" and "start[ed] weaving in between traffic" until it hit another pickup truck.

Tiffany Rosson, who was traveling on Highway 90, saw on the access road "an individual hanging on the side of a black Tundra pickup." "She was standing on the rail on the bottom railing holding on." According to Rosson, the pickup truck was swerving, going back and forth. "The truck did not slow down." "The truck moved to the outside lane, clipped the back corner" of the other pickup truck. "The individual flew up, flew back." "The black truck then picked up speed and continued to go." Rosson testified the truck "did not slow down."

Caitlin Alexander was driving the pickup truck hit by Thompson. She testified she was traveling on the access road and passed the Exxon when she heard screaming and looked in her rearview mirror. She saw a pickup truck, traveling "at a high rate of speed coming down the road." She saw a woman hanging on to the pickup truck and began slowing her own vehicle. According to Alexander, the pickup truck was "swerving through several lanes," "all three lanes." The pickup truck did not slow down and Alexander realized it was going to hit her own truck. She felt a slight impact, looked up, and "saw the pickup truck, like they were trying to regain control of their vehicle and took off." She then saw the woman who had been hanging on to the pickup truck lying on the road.

Thompson was interviewed by police, and the recording of his interview was admitted in evidence. He admitted to having stolen Pitts's "cell phone case" from her car. He admitted to having left the Exxon station at a high rate of speed in an attempt to get away. He admitted to driving about fifty miles per hour down the access road. However, he claimed that he did not

realize Pitts was standing on the running board of the pickup truck when he left the Exxon station. He told police that he did not realize she was there until he heard someone say "stop," looked back, and was "shocked" to see someone on the driver's side running board. The detective explained that she knew the window on the driver's side of the pickup truck had been cracked because of surveillance video. She asked Thompson, if his window was cracked and Pitts was standing on the driver's side running board, how he could not have heard Pitts screaming. Thompson responded, "I can't remember hearing anything because I was in a frenzy and things were blocked out. I didn't hear nothing." Thompson, however, admitted Pitts said stop "loudly." But, he claimed Pitts was not screaming and he heard her say "stop" only one time. "I just remember the one stop." The detective noted that Pitts was hanging on the pickup truck for "quite a ways" down the access road and that witnesses said Thompson had been swerving back and forth. Thompson claimed he did not swerve. When the detective pointed out that his tire marks were on the road, Thompson said he "was really scared" and "was trying to get away." When the detective asked why he did not stop when he saw Pitts hanging on to the pickup truck, he replied, "I just pulled off." The detective again asked if he thought to stop and let her off the pickup truck, Thompson replied, "I wasn't thinking." He claimed he would have jumped off the pickup truck if he had been Pitts. The detective then asked what Thompson thought would happen if he were to jump off a pickup truck traveling at about fifty miles per hour. Thompson admitted that he would "get hurt real bad." Thompson claimed that the other pickup truck he bumped "was trying to cut [him] off or something." "They hit me and then she just flew off!" Thompson said he hit his brakes to avoid hitting the other pickup truck, but admitted that he never came to a full stop and continued on down the access road. The detective asked why Thompson did not stop and whether Thompson thought Pitts would be hurt when she flew off the pickup truck. Thompson adamantly responded, "Not at all! I was shocked!" Thompson said he did not think to stop because another truck was chasing

him and he was scared. "I didn't think she would be hurt." The detective then asked what happens to motorcyclists who fall off motorcycles without wearing helmets at fifty miles per hour. Thompson admitted, "They die." Nevertheless, Thompson stated that he "didn't wilfully kill her." According to Thompson, when he realized she was on the pickup, "I was already on the road and things got out of control."

Photographs of the pickup truck driven by Thompson show a large dent to the driver's side where Pitts was standing on the running board.

From this evidence, a rational juror could infer that Thompson intended to kill Pitts. Witnesses reported that they could hear Pitts screaming even though their car windows were up. They saw Pitts hanging from the driver's side of the pickup driven by Thompson. There was evidence that the driver's window on the pickup truck was cracked. Even Thompson admitted that he heard Pitts once tell him to stop. From the time Thompson peeled out from the Exxon station, witnesses reported that Thompson was swerving back and forth between traffic. One witness reported that it looked like Thompson was "trying to throw her off." All the witnesses testified that Thompson was going very fast and was accelerating down the access road. We hold the evidence is sufficient to support Thompson's conviction of capital murder.

## LESSER-INCLUDED OFFENSES

The jury was instructed on the charged offense, capital murder, and the lesser-included offense of felony murder. Thompson argues he was also entitled to instructions on the lesser-included offenses of manslaughter and criminally negligent homicide. "The difference between criminally negligent homicide and involuntary manslaughter is the culpable mental state required to establish each offense—criminal negligence for the former and recklessness for the latter." *Dowden v. State*, 758 S.W.2d 264, 270 (Tex. Crim. App. 1988). A person commits the offense of criminally negligent homicide if he causes the death of an individual by criminal negligence. TEX.

PENAL CODE ANN. § 19.05(a). A person acts with criminal negligence with respect to circumstances surrounding his conduct or the result of his conduct when he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. *Id.* § 6.03(d). "The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint." *Id.*

A defendant is entitled to the submission of a lesser-included offense if a two-pronged test is met: (1) the lesser-included offense must be included within the proof necessary to establish the offense charged, and (2) some evidence must exist in the record that would permit a rational jury to find that if the defendant is guilty, *he is guilty only of the lesser offense. Solomon v. State*, 49 S.W.3d 356, 368-69 (Tex. Crim. App. 2001). Both manslaughter and criminally negligent homicide are lesser included offenses of capital murder. *Dowden*, 758 S.W.2d at 270. Thus, Thompson has met the first prong of the test. However, Thompson fails to meet the second prong of the test.

In considering whether there is some evidence in the record that a defendant, if guilty, is guilty *only* of the lesser offense, "[i]t is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense. Rather, there must be some evidence directly germane to a lesser-included offense for the factfinder to consider before an instruction on a lesser-included offense is warranted." *Solomon*, 49 S.W.3d at 369 (alteration in original) (citation omitted). "The evidence must establish the lesser-included offense *as a valid rational alternative* to the charged offense." *Wesbrook v. State*, 29 S.W.3d 103, 113 (Tex. Crim. App. 2000) (emphasis added).

Thompson was charged with capital murder pursuant to section 19.03(a)(2). *See* TEX. PENAL CODE ANN. § 19.03(a)(2) ("A person commits an offense if the person commits murder as defined under section 19.02(b)(1) and . . . (2) the person intentionally commits the murder in the

- 10 -

course of committing or attempting to commit . . . robbery . . . ."). Specifically, the indictment alleged that Thompson intentionally caused the death of Vanessa Pitts while he was in the course of committing or attempting to commit a robbery. The application paragraph of the jury charge instructed the jury as follows:

> Now, if you find from the evidence beyond a reasonable doubt that on or about the 12th day of April 2010 in Bexar County, Texas, the defendant, Lorenzo Thompson, did intentionally cause the death of an individual, namely, Vanessa Pitts, by driving and swerving a motor vehicle from side to side, and/or by steering the said vehicle into another motor vehicle, causing Vanessa Pitts to be thrown from said vehicle, and Lorenzo Thompson was in the course of committing or attempting to commit the offense of robbery of Vanessa Pitts, then you will find the defendant guilty of capital murder as charged in the indictment. If you do not so find beyond a reasonable doubt, if you have a reasonable doubt thereof, or you are unable to agree, you will next consider whether the defendant is guilty of the lesser included offense of murder.

In addition to capital murder, the jury was given an instruction on the lesser-included offense of felony murder. *See* TEX. PENAL CODE ANN. § 19.02(b)(3) ("A person commits an offense if he . . . (3) commits or attempts to commit a felony, other than manslaughter, and in the course of and in furtherance of the commission or attempt, or in the immediate flight from the commission or attempt, he commits or attempts to commit an act clearly dangerous to human life that causes the death of an individual."). The application paragraph of the instruction on felony murder stated the following:

> Now, if you find from the evidence beyond a reasonable doubt that on or about the 12th day of April 2010, in Bexar County, Texas, the defendant, Lorenzo Thompson, did intentionally or knowingly commit or attempt to commit a felony, to wit: robbery, and in the course of and in furtherance of the commission or attempt, or in immediate flight from the commission or attempt to commit robbery, Lorenzo Thompson did commit an act clearly dangerous to human life, to wit: by driving and swerving a motor vehicle from side to side, and/or by steering the said vehicle into another motor vehicle, causing Vanessa Pitts to be thrown from said vehicle, thereby causing the death of Vanessa Pitts, then you will find the defendant guilty of the lesser included offense of murder. If you do not so find beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will find the defendant not guilty.

As noted, Thompson was entitled to instructions on the lesser-included offenses of manslaughter and criminally negligent homicide only if there is some evidence in the record that would have permitted a rational jury to find that if Thompson was guilty, he was guilty *only* of manslaughter or criminally negligent homicide. As Thompson was charged with capital murder by murdering Vanessa Pitts *in the course of committing or attempting to commit robbery*, the second prong is met in this case only if, in addition to there being evidence in the record from which a jury could rationally conclude there was not a murder, there is also evidence in the record from which a jury could rationally conclude that there was no robbery at the time of the murder. *See Solomon*, 49 S.W.3d at 369 (explaining that a person charged with capital murder was not entitled to lesser-included instruction on aggravated robbery unless there was evidence showing that if he was guilty, he was guilty only of aggravated robbery because there was evidence that (1) there was no murder; (2) the murder was not committed in furtherance of a conspiracy; or (3) the murder should not have been anticipated); *Badgett v. State*, No. 04-07-00364-CR, 2009 WL 142324, at *14 (Tex. App.—San Antonio 2009, pet. ref'd) (holding appellant, who was charged with capital murder, was not entitled to lesser-included instruction of aggravated robbery, robbery, and murder because there was no evidence from which a rational jury could conclude that appellant was (1) guilty only of murder (and not a murder committed in the course of committing a robbery); or (2) only guilty of robbery or aggravated robbery (and thereby, not guilty of the murder, by his own hand or as a party)).

Like in his sufficiency issue, Thompson argues that the robbery ended at the Exxon station and did not continue down the access road. However, as explained previously, this argument ignores that a robbery continues when one is in immediate flight after the commission of the theft. *See* TEX. PENAL CODE ANN. §§ 29.01(1); 29.02(a). Here, there is no evidence from which a rational jury could conclude that Thompson was not in immediate flight after stealing Pitts's purse when

Pitts was killed. Even Thompson in his videotaped statement to police admitted that he was fleeing from the Exxon station after stealing Pitts's cell phone container. As there is no evidence from which a rational juror could conclude that the robbery ended at the Exxon station, Thompson was not entitled to instructions on manslaughter and criminally negligent homicide.

## JURY ARGUMENT

Thompson argues that the State engaged in improper argument during its closing argument in the guilt/innocence phase of the trial. A proper jury argument must fall within one of four general areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; and (4) plea for law enforcement. *Freeman v. State*, 340 S.W.3d 717, 727 (Tex. Crim. App. 2011). Any appellate claim that a prosecution argument strayed outside of these categories is forfeited if there was no contemporaneous trial objection. *Threadgill v. State*, 146 S.W.3d 654, 667 (Tex. Crim. App. 2004). If there was a contemporaneous trial objection to improper jury argument, such argument does not result in reversal "unless, in light of the record as a whole, the argument is extreme or manifestly improper, violative of a mandatory statute, or injects new facts harmful to the accused into the trial proceeding." *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000). "The remarks must have been a willful and calculated effort on the part of the State to deprive appellant of a fair and impartial trial." *Id*

Thompson claims that the State improperly informed the jury that the trial court did not believe the instruction regarding the lesser-included offense of murder. During its closing, the State argued as follows:

> State: A lot of you, I'm not sure all of you, but a lot of you, we talked about how lesser included offenses work. *Lesser included offenses, when they're placed in the charge, are not placed there because the Judge is endorsing the lesser included charge.*
>
> Defense: Judge, I'm going to object to any attempt to nullify the Court's charge to the jury. It's improper argument.

> Court: Overruled. Continue.
>
> State: It's not because the Court is endorsing it. The Court is obligated not to comment on the evidence period. If something is raised by any evidence, no matter whether it be credible or not, the Judge has an obligation to put it into the charge, okay?

(emphasis added).

Thompson claims that the State's argument improperly informed the jury that the trial court did not "believe" the instruction regarding the lesser-included offense of murder. *See Dunbar v. State*, 551 S.W.2d 382, 384 (Tex. Crim. App. 1977) (holding that the prosecutor's statements that the inclusion of self-defense in the charge "doesn't mean that the Court believes that is what happened" was improper because the statements were "direct references to the trial court's beliefs about the case"). Here, the State did not directly refer to the trial court's beliefs about this case. "A prosecutor may without referring to any belief of the trial court properly advise the jury that any relevant testimony about which raises a material fact issue will cause the court to submit a charge explaining the law on that issue." *Id.* "Such advice, as well as any reasonable and proper explanation of the law of the case as contained in the court's charge would fall within the enumerated rules of jury argument." *Id.* In considering the context of the statements made by the prosecution, we hold that the statements were not improper. *See id.* Moreover, even if the statements constituted improper argument, they would not mandate a reversal of Thompson's conviction. *See Wesbrook*, 29 S.W.3d at 115 (explaining that when the defense timely objects to improper argument, a reversal of the conviction does not result "unless, in light of the record as a whole, the argument is extreme or manifestly improper, violative of a mandatory statute, or injects new facts harmful to the accused into the trial proceeding").

**ATTORNEY'S FEES**

In his final issue, Thompson argues that the judgment should be modified to redact attorney's fees from the assessed court costs because the appellate record fails to establish his ability to pay attorney's fees. At oral argument, the State conceded that attorney's fees should not be assessed against Thompson. In considering the record, we agree with Thompson that the record is insufficient to support the imposition of attorney's fees against him. We therefore modify the judgment to delete any assessment of attorney's fees.

**CONCLUSION**

For the reasons explained above, the evidence is sufficient to support Thompson's conviction of capital murder, and the trial court did not err in failing to instruct the jury on the lesser-included offenses of manslaughter and criminally negligent homicide. Further, the trial court did not err in overruling Thompson's objection to the State's closing argument. However, because the trial court's judgment improperly assessed attorney's fees against Thompson, we modify the judgment to delete any assessment of attorney's fees. As modified, we affirm the judgment of the trial court.

Karen Angelini, Justice

PUBLISH