# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-13-00602-CV

**Texas Department of Public Safety, Appellant**

**v.**

**Evan Grant Botsford, Appellee**

### FROM THE COUNTY COURT AT LAW NO. 2 OF HAYS COUNTY
### NO. 13-0100-C, HONORABLE LINDA RODRIGUEZ, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant the Texas Department of Public Safety (DPS) appeals from a county-court-at-law judgment reversing the administrative suspension of appellee Evan Grant Botsford's driver's license. An administrative law judge (ALJ) had previously upheld the suspension based on Botsford's refusal to submit to an alcohol concentration test after being stopped for violating a San Marcos city ordinance. We will reverse the county court at law's judgment and render judgment affirming the ALJ's order sustaining the administrative suspension.

## Background

At about 1:00 a.m. on August 11, 2012, Texas State University Sergeant Jason Moreno was assisting another police officer with a traffic stop in the parking lot of Palmer's Restaurant at the intersection of Hutchison and Moore streets in San Marcos, Texas. During that stop, Sergeant Moreno observed Botsford "peel out" or "break [his vehicle's] tires from the

pavement" from a traffic light at the intersection of Moore and Hutchison streets. Sergeant Moreno believed that Botsford's actions violated a San Marcos city ordinance that made it "unlawful for a person to operate a motor vehicle in a public place in a manner that causes any of the wheels of the vehicle to spin or slide across the ground without normal traction." San Marcos, Tex., Code of Ordinances § 82.006. Accordingly, Sergeant Moreno followed Botsford, catching up with him near the "1500 Block of Ranch Road 12" and stopping him in the "100 block of Hughson Street." During the ensuing traffic stop, Sergeant Moreno became suspicious that Botsford was intoxicated and performed field sobriety tests on Botsford. As a result of these tests, Sergeant Moreno concluded that Botsford was intoxicated and arrested him. Botsford refused to submit to an alcohol concentration test at the scene, which triggered an automatic suspension of his driver's license for 180 days. *See* Tex. Transp. Code §§ 724.031–.35(a)(1).

Botsford sought an administrative review of the suspension of his driving privileges before an administrative law judge (ALJ) with the State Office of Administrative Hearings. At the resulting contested case hearing, DPS had the burden to prove by a preponderance of the evidence that—

(1)     reasonable suspicion or probable cause existed to stop or arrest [Botsford];

(2)     probable cause existed to believe that [Botsford] was . . . operating a motor vehicle in a public place while intoxicated . . . ;

(3)     [Botsford] was placed under arrest by [Sergeant Moreno] and was requested to submit to the taking of a specimen; and

(4)     [Botsford] refused to submit to the taking of a specimen on request of [Sergeant Moreno].

2

*See* Tex. Transp. Code § 724.042 (issues at hearing). Sergeant Moreno testified at the administrative hearing, and his sworn reports regarding the incident were entered into evidence. After the hearing, the ALJ issued an administrative decision incorporating the following findings of fact:

1)      On August 11, 2012, reasonable suspicion to stop the Defendant existed, in that: The arresting officer observed the Defendant's vehicle "peeling out" on the roadway in violation of city ordinance. Defendant was operating a Dodge Ram on Moore Street in the city of San Marcos, Hays County, Texas, at the time of the violation.

2)      On the same date, probable cause existed to believe that Defendant was operating a motor vehicle in a public place while intoxicated, because in addition to the facts in No. 1, the Defendant had: red bloodshot eyes, slurred speech, and an odor of alcohol coming from Defendant's breath.

3)      The arresting office administered field sobriety tests on the Defendant and observed the following: six of six clues on the Horizontal Gaze Nystagmus test. Defendant refused to perform any other tests.

4)      Defendant was arrested and was asked to submit a specimen of breath.

5)      After being requested to submit a specimen of breath, Defendant refused.

Based on these findings, the ALJ concluded that DPS had satisfied its burden of proof under the Transportation Code, *see id.*, and sustained DPS's 180-day administrative suspension. *See id.* § 724.043(a) (requiring ALJ to sustain suspension order upon affirmative findings of section 724.042 elements).

Botsford appealed his suspension to the County Court at Law as allowed under the Transportation Code. *See id.* §§ 724.047, 524.041(a)–(d). In his appeal to the County Court at Law, Botsford argued that the ALJ erred in concluding that Sergeant Moreno had reasonable suspicion for the traffic stop—i.e., the first of the four elements of DPS's burden, *see id.* Specifically, Botsford

3

argued that the ALJ's finding of reasonable suspicion was improper because (1) Sergeant Moreno's account of the incident, including his description of Botsford "peeling out," provided no articulable facts to support the conclusion that Botsford had violated a San Marcos city ordinance, and (2) DPS failed to present any evidence that the alleged violation of a San Marcos ordinance occurred within the San Marcos city limits. After a hearing, the County Court at Law vacated the ALJ's order without stating the basis for the ruling. On appeal, DPS challenges both grounds of objection that Botsford presented to the County Court at Law.

## Analysis

An ALJ's decision to suspend a driver's license is reviewed under section 2001.174 of the Texas Administrative Procedure Act. *See Mireles v. Texas Dep't of Public Safety*, 9 S.W.3d 128, 131 (Tex. 1999) (per curiam). Section 2001.174 requires that a reviewing court reverse or remand a case for further proceedings "if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions" are

(A)     in violation of a constitutional or statutory provision;

(B)     in excess of the agency's statutory authority;

(C)     made through unlawful procedure;

(D)     affected by other error of law;

(E)     not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or

(F)     arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

4

Tex. Gov't Code § 2001.174(2). However, the reviewing court may not substitute its judgment for that of the agency's on the weight of the evidence on matters committed to agency discretion. *Id*. With respect to subparagraph (E), "substantial evidence" does not mean a large or considerable amount of evidence, but such relevant evidence as a reasonable mind might accept as adequate to support a conclusion of fact. *Pierce v. Underwood*, 487 U.S. 552, 564–65 (1988); *Lauderdale v. Texas Dep't of Agric.*, 923 S.W.2d 834, 836 (Tex. App.—Austin 1996, no writ). The test is not whether the agency made the correct conclusion in the reviewing court's view, but whether some reasonable basis exists in the record for the agency's action. *See Mireles*, 9 S.W.3d at 131 (citing *City of El Paso v. Public Util. Comm'n*, 883 S.W.2d 179, 185 (Tex. 1994)). A reviewing court must uphold an agency's finding even if the evidence actually preponderates against it, so long as enough evidence suggests the agency's determination was within the bounds of reasonableness. *See id.* The question of whether there is substantial evidence to support an administrative decision is a question of law that we review de novo. *See Texas Dep't of Pub. Safety v. Alford*, 209 S.W.3d 101, 103 (Tex. 2006).

**Did Sergeant Moreno have reasonable suspicion for the traffic stop?**

In its first issue on appeal, DPS argues that the evidence—i.e., Sergeant Moreno's testimony and sworn reports—establishes that Sergeant Moreno had a reasonable suspicion to believe that Botsford violated the San Marcos city ordinance making it unlawful to operate a motor vehicle in a manner that causes any of the wheels of the vehicle to spin without normal traction. *See Ford v. State*, 158 S.W.3d 488, 492 (Tex. 2006) (noting that officer may initiate

5

temporary detention, such as traffic stop, when he has reasonable suspicion to believe that individual is violating law). We agree.

Reasonable suspicion exists when, based on the totality of the circumstances, the officer has specific articulable facts that, when combined with rational inferences from those facts, would lead the officer to believe that an individual is, has been, or soon will be engaged in criminal activity. *Id.* at 492. Officer Moreno stated in his incident report that he stopped Botsford after "observ[ing Botsford's vehicle] break its tires from the pavement, known as 'peeling out,'" because "break[ing] your tires from the pavement" is a "city ordinance violation." Likewise, Sergeant Moreno testified at the hearing that he initially noticed Botsford when he heard "[h]im peeling out on his tires or wrecking his tires from the cement at the light, or accelerating way too quickly." As noted, the San Marcos Code of Ordinances makes it "unlawful for a person to operate a motor vehicle in a public place in a manner that causes any of the wheels of the vehicle to spin or slide across the ground without normal traction." *See* San Marcos, Tex., Code of Ordinance § 82.006(b). Despite Botsford's arguments to the contrary, we hold that "peeling out" is a phrase commonly used to describe when a vehicle accelerates so quickly that its tires lose traction, spin, and make a squealing noise. It is such a common phrase and so readily understood, in fact, that its use requires no explanation.[1] Accordingly, Sergeant Moreno's description of what

---

[1] *See, e.g.*, *Rice v. State*, 333 S.W.3d 140, 141 n.2 (Tex. Crim. App. 2011) (using "peeled out" without definition or explanation); *Wilson v. State*, 863 S.W.2d 59, 64 (Tex. Crim. App. 1993) (using phrase "peeling out" multiple times without definition or explanation); *Thompson v. State*, No. 04–12–00557–CR, __S.W.3d__, 2014 WL 300955, at *3–6 (Tex. App.—San Antonio 2014, no pet. h.) (same); *Fernandez v. State*, 306 S.W.3d 354, 358, 361–62, 364, 369 (Tex. App.—Fort Worth 2010, no pet.) (same); *Boget v. State*, 40 S.W.3d 624, 625–26 (Tex. App.—San Antonio 2001), *affirmed by* 74 S.W.3d 23 (Tex. Crim. App. 2002); *Collins v. State*, 829 S.W.2d 894, 895 (Tex. App.—Dallas 1992, no pet.) (using "peeled out" without specific definition).

he saw or heard here—i.e., that Botsford peeled out from a red light and accelerated quickly down the street—constitutes a violation of the San Marcos city ordinance 82.006. And when observed by an officer, such an act supports the conclusion that a traffic stop was justified by a reasonable suspicion. *See State v. Elias*, 339 S.W.3d 667, 675 (Tex. Crim. App. 2011). As such, Sergeant Moreno's reports and testimony provide a reasonable basis for the ALJ's finding that Sergeant Moreno had reasonable suspicion to stop Botsford for violating the ordinance in question. We sustain DPS's first issue.

**Was there substantial evidence that the violation occurred within San Marcos city limits?**

In its second issue on appeal, DPS addresses Botsford's challenge that DPS had failed to present any evidence to the ALJ that the alleged violation of San Marcos' city ordinance occurred within San Marcos city limits. Specifically, DPS contends that there is substantial evidence in the record to support the ALJ's finding that Botsford's violation of the ordinance occurred within San Marcos city limits. We agree.

As the fact finder in an administrative hearing, the ALJ is permitted to draw reasonable inferences from the evidence. *See* Tex. Gov't Code § 2001.174 (making inferences reviewable); *Texas Health Facilities Comm'n v. Charter Med.-Dallas, Inc.*, 665 S.W.2d 446, 453 (Tex. 1984) (same). In this case, although there is no specific reference to the City of San Marcos in connection with Botsford's violation, there is evidence to support a reasonable inference that the violation occurred in San Marcos, Texas:

• Sergeant Moreno, an officer of Texas State University's police department, was assisting with a traffic stop in the parking lot of Palmer's Restaurant at the intersection of Hutchison and Moore streets when he heard or observed Botsford peel out;

7

- Botsford's vehicle was departing from a traffic light on the northbound side of Moore Street where it intersects with Hutchison Street when he peeled out;

- Sergeant Moreno believed that Botsford's actions violated a San Marcos city ordinance;

- Sergeant Moreno followed Botsford and caught up with him in the "1500 block of Ranch Road 12"; and

- Sergeant Moreno stopped Botsford in the "100 block of Hughson Street."

Based on this evidence, the ALJ could have reasonably inferred that Sergeant Moreno witnessed Botsford peel out inside San Marcos city limits (and thus, Botsford's actions would constitute a violation of San Marcos ordinance). *See Bender v. State*, 739 S.W.2d 409, 412 (Tex. App.—Houston [14th Dist.] 1987, pet. ref'd) (holding that officer's description of addresses and intersections provided circumstantial evidence that arrest occurred in Houston, Texas).

In the alternative, the ALJ could have taken judicial notice of the fact that the incident took place in San Marcos. Texas Rule of Evidence 401 allows a court to take judicial notice, whether requested or not, of a fact "generally known within the territorial jurisdiction of the trial court" or a fact "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." The ALJ, by resort to obtainable, accurate reference sources, could readily confirm that there is a Palmer's Restaurant located at the intersection of Moore and Hutchison streets in San Marcos, Texas; and that the 1500 block of old Ranch Road 12 and the 100 block of Hughson are located in San Marcos. *See id.* (noting that court could take judicial notice that the addresses and intersections described by officer were located in Houston, Texas). Accordingly, there is sufficient evidence in the record to provide a reasonable basis for the ALJ's determination that Botsford's actions occurred in San Marcos, Texas, thus constituting a violation

of San Marcos city ordinance and supporting Sergeant Moreno's reasonable suspicion or probable cause to stop Botsford. We sustain DPS's second issue on appeal.

## Conclusion

Having sustained DPS's two issues on appeal, we reverse the trial court's judgment and render judgment reinstating the ALJ's suspension of Botsford's license.

 

 

_____

Jeff Rose, Justice

Before Chief Justice Jones, Justices Pemberton and Rose

Reversed and Rendered

Filed: March 7, 2014