

NUMBER 13-14-00002-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**FRANCISCO JAVIER GONZALEZ,** **Appellant,**

**v.**

**THE STATE OF TEXAS,** **Appellee.**

---

### On appeal from the 370th District Court of Hidalgo County, Texas.

---

# MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Perkes and Longoria
### Memorandum Opinion by Justice Longoria

By one issue, appellant Francisco Javier Gonzalez challenges the sufficiency of

the evidence supporting his conviction for first-degree murder. *See* TEX. PENAL CODE

ANN. § 19.02(b)(1) (West, Westlaw through 2013 3d C.S.). Appellant asks us to reform

the judgment to the lesser-included offense of manslaughter.  *See id.* § 19.04 (West, Westlaw through 2013 3d C.S.).  We affirm.

## I. BACKGROUND

In June of 2011, Javier Vargas lived in a residence on Daniel Road in Palmview, Texas with his girlfriend, their children, Vargas's sister Julissa Ramos, his niece, and his nephews Adrian Salinas and Jonathan Ramos.  At the time, Adrian was seventeen years-old and Jonathan, the decedent, was sixteen.  Vargas testified that Julissa moved out of Vargas's house and into appellant's house when they began dating in October of 2010.  Julissa and appellant, who goes by the name "Indio," later moved back into Vargas's house.  Shortly afterwards, Vargas asked appellant to move out because appellant allegedly physically assaulted Julissa.  Appellant moved to a nearby house on Daniel Road where he lived with his grandmother and various other family members.

On the evening of June 26, 2011, Jonathan and Adrian were on the back porch of Vargas's house drinking wine and smoking marijuana.  Vargas asked them to come in when Vargas went to bed at some point between 9:00 and 10:00 p.m.  Adrian testified that around 1:00 a.m., "[w]e were already going to bed, but John[athan] left for something.  For - - to see a girl, I think, and he came back yelling that someone - - that 'Indio' was there."  Adrian testified that Jonathan took off running down the street towards the house where appellant lived because appellant "was calling us out and everything from the street."  Vargas testified that Adrian banged on Vargas's door, woke him up, and they both ran after Jonathan to calm him down.  Vargas testified that appellant was "taunting" Jonathan and "telling him to come and do something about it."  According to Vargas, appellant then entered his van and went in the opposite direction of Vargas's house.

2

Vargas and Adrian caught up with Jonathan around the intersection of Daniel and King Fisher Road and calmed him down. Appellant stopped the van at the intersection of Daniel and Tordillo and continued taunting Jonathan with phrases such as "Come get me. I'm going" and "I'll kick your ass." Jonathan ran in appellant's direction again until Vargas caught up to Jonathan and physically grabbed him. Vargas, Jonathan, and Salinas began walking back to Vargas's home while appellant reentered his van and began "revving his engine."

According to Vargas and Adrian, they were walking on the left shoulder with Adrian and Jonathan a short distance in front. Vargas did not see the van strike Jonathan, but "heard a loud thump. The van was right next to us. I heard a loud thump, and saw something land in the bushes." Adrian testified that he heard "tires screeching" and the van "was already coming full speed." One of the van's side mirrors narrowly missed striking Vargas's shoulder. Vargas found Jonathan face-down on the grass, with a "very light pulse." After striking Jonathan, the van flipped over, hit the fence on the side of the road, and righted itself. Vargas ran towards the van as it was backing up, reached in through the broken window, and grabbed appellant by his shirt. Vargas related that the "window seal" caught Vargas's arm, spun him around, and tossed him to the ground where he was almost run over by the back tire. Vargas testified that he did not see anyone in the van other than appellant. After Vargas fell off of the van, it drove away at a high rate of speed. Marie Villarreal, a neighbor of both appellant and Jonathan's family, testified that she was sitting on her porch at the time. She observed appellant make the U-turn and drive "straight at" where Jonathan and Adrian were walking. The remainder of her testimony was substantively similar to the testimony of Vargas and Adrian.

3

After the van left, several neighbors came up and loaded Jonathan into the bed of a pickup truck to take him to the hospital while Vargas ran back to his house to call police. Jonathan died of his injuries on the way to the hospital. Police obtained a warrant for appellant's arrest. On July 8, 2013, the Border Patrol apprehended appellant when he attempted to reenter the country from Mexico.

Appellant gave a statement to Hidalgo County Sherriff's Department Investigator Juan Jose Vasquez that on the night of Jonathan's death, appellant drove his friend Rigo to appellant's grandmother's house because Rigo wanted to see his wife, who is appellant's cousin. When driving Rigo home, appellant made a U-turn where the street terminated in a dead-end and drove back past his grandmother's house. Appellant states that the following occurred at that time:

> I heard loud noises like someone was throwing rocks or something at our van. I ducked down, kept driving and then I felt like I ran over some type of bump or something. Then I looked up and I was losing control of the van because it was going side to side and then I crashed into a fence. I looked around and I did not see Rigo in the van. The van turned off, so I turned it on, I backed up and drove away.

Appellant parked the van in a store parking lot near the Reynosa International Bridge and crossed into Mexico.[1] After serving a prison term in Mexico, he returned to the United States.

The State charged appellant by indictment with first-degree murder. *Id.* Appellant pleaded not guilty, and the State tried the case to a jury. The jury returned a verdict of guilty and assessed punishment at imprisonment for seventy years in the Texas Department of Justice—Institutional Division, no fine, and court costs.

## II. SUFFICIENCY OF THE EVIDENCE

---

[1] The State's brief informs us that police never located the van.

By his sole issue, appellant argues that the evidence is insufficient to establish that he had the conscious intent or desire to strike Jonathan with the van to cause Jonathan's death.

## A. Standard of Review and Applicable Law

In a legal-sufficiency review, we view all the evidence in the light most favorable to the jury's verdict and determine whether, based on that evidence and reasonable inferences drawn from it, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Anderson v. State*, 416 S.W.3d 884, 888 (Tex. Crim. App. 2013). We may not usurp the jury's role by substituting our own judgment for that of the jury. *Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012). It is the responsibility of the jury, acting as the trier of fact, to resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from basic facts to ultimate facts. *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011). Juries may draw "multiple reasonable inferences" from the evidence so long as each inference is supported by the evidence, but may not draw conclusions based only on speculation. *Anderson*, 416 S.W.3d at 888. However, if the record merely supports conflicting inferences, we presume the jury resolved any conflicts in favor of their verdict and defer to that resolution. *Merritt v. State*, 368 S.W.3d 516, 525–26 (Tex. Crim. App. 2012).

We measure the sufficiency of the evidence by the elements of the offense as defined by the hypothetically correct jury charge for the case. *Yzaguirre v. State,* 394 S.W.3d 526, 528 (Tex. Crim. App. 2013) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). The hypothetically correct charge is one that is authorized by the indictment, accurately sets out the law, does not unnecessarily increase the State's

burden of proof or unnecessarily restrict its theories of liability, and adequately describes the particular offense for which the defendant was tried. *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009). The hypothetically correct jury charge in this case would require the State to prove that appellant: (1) intentionally or knowingly, (2) caused the death of Jonathan; (3) by striking him with a deadly weapon, a motor vehicle. *See* TEX. PENAL CODE ANN. § 19.02(b)(1).

A person acts with intent with respect to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result. *See Trevino v. State*, 228 S.W.3d 729, 755–56 (Tex. App.—Corpus Christi 2006, pet. ref'd); TEX. PENAL CODE ANN. § 6.03(a) (West, Westlaw through 2013 3d C.S.). A person acts knowingly with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result. *See Trevino*, 228 S.W.3d at 756; TEX. PENAL CODE ANN. § 6.03(b) (West, Westlaw through 2013 3d C.S.). Intent is most frequently established via circumstantial evidence. *Thompson v. State*, 423 S.W.3d 475, 479 (Tex. App.—San Antonio 2014, no pet.). The jury "may infer intent from any facts that tend to prove its existence, such as the acts, words, and conduct of the defendant." *Id.*; *see Trevino*, 228 S.W.3d at 756.

## B. Discussion

By his sole issue, appellant argues that the evidence is insufficient to establish that he intentionally or knowingly acted to cause Jonathan's death, but concedes that the evidence does establish that he acted recklessly.[2] Appellant asks us to reform the

---

[2] *See* TEX. PENAL CODE ANN. § 6.03(c) (West, Westlaw through 2013 3d C.S.) ("A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur").

judgment of conviction to manslaughter, (which was one of the lesser-included offenses submitted to the jury), vacate his sentence, and remand for a new punishment hearing. *See Thornton v. State*, 425 S.W.3d 289, 299–300 (Tex. Crim. App. 2014) (reforming judgment to lesser-included offense is available to the court of appeals as an alternative to acquittal in some cases). We disagree with appellant's argument and decline his invitation to reform the judgment.

Our review of the record revealed that the jury had the following circumstantial evidence from which it could infer appellant's intent: (1) appellant and Jonathan had a history of conflicts over appellant's alleged assaults of Jonathan's mother; (2) appellant taunted and invited Jonathan to fight several times that night, including when appellant stopped his van almost immediately before appellant made a U-turn and struck Jonathan; (3) testimony from several witnesses that immediately after taunting Jonathan, appellant made a U-turn and accelerated at a "high rate of speed" down the road where he knew Jonathan, Vargas, and Salinas were walking; (4) testimony from Villarreal that appellant drove "straight at" Jonathan and Adrian while they were walking on the side of the street; and (5) the fact that appellant fled from the scene despite Vargas's efforts to stop him and, by appellant's own admission, fled to Mexico the same night and remained there for over a year. *See Clayton v. State*, 235 S.W.3d 772, 780 (Tex. Crim. App. 2007) (providing that a jury can draw inference of guilt from flight in some circumstances); *see also Almaguer v. State*, No. 13-12-00605-CR, __ S.W.3d __, 2014 WL 1415182, at *17 (Tex. App.—Corpus Christi Apr. 10, 2014, no pet.) (observing in the context of a harmless error analysis that the defendant's flight to Mexico immediately after the victim's death "can be

taken as consciousness of guilt").[3]  Based on the foregoing evidence, we conclude that a rational trier of fact could find beyond a reasonable doubt that appellant acted intentionally or knowingly.  *See Anderson*, 416 S.W.3d at 888.  We overrule appellant's sole issue.

### III. CONCLUSION

We affirm the judgment of the trial court.

NORA L. LONGORIA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
28th day of August, 2014.

---

[3] Appellant cites to two cases with similar facts where the court of appeals upheld convictions for manslaughter.  However, neither case is relevant to his argument because both involved whether there was sufficient evidence of recklessness to sustain a conviction for manslaughter.  *See Griffith v. State*, 315 S.W.3d 648, 652 (Tex. App.—Eastland 2010, pet. ref'd); *Dotson v. State*, 146 S.W.3d 285, 295 (Tex. App.—Fort Worth 2004, pet. ref'd).